UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                            :

LEVON SMITH,                      :        04 Civ. 3286 (TPG)

                  Plaintiff,      :

                            :

        – against –        :        **__OPINION__**

THE CITY OF NEW YORK, POLICE    :
OFFICER JORGE TOBON, Shield #29637 :
POLICE OFFICER HERIBERT     :
BERMUDEZ, Shield #30246,      :
DETECTIVE JAMES SOUTH, Shield   :
#06130, and "JOHN DOE #s 1 through :
5" (being unidentified police officers who :
were with Detective South when    :
plaintiff's shop located at 2 East 116th :
Street, New York, New York, was    :
padlocked on or about May 23, 2003),  :

                Defendants.   :

------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #: _____
DATE FILED: 8/27/10
```

Plaintiff brings a federal civil rights action pursuant to 42 U.S.C. § 1983 on the basis of three separate incidents, alleging that he was subjected to unlawful search and seizure, false arrest, false imprisonment, excessive force, and malicious prosecution, and that his place of business was unlawfully searched and seized. Plaintiff also brings causes of action for assault and battery, malicious prosecution, conversion, and trespass pursuant to New York state law.

Defendants now move for partial summary judgment pursuant to Fed. R. Civ. P. 56 with respect to all claims arising from the incidents on June 25,

2002 and May 23, 2003. Plaintiff cross-moves for partial summary judgment on liability for the incident on March 19, 2003.

Defendants' motion is granted. Plaintiff's motion is denied.

## **Background**

The following facts are undisputed unless otherwise noted.

### June 25, 2002 Incident

Plaintiff Levon Smith was the owner of a business located at 2 East 116th Street in Harlem which fixed flat tires and sold new and used tires. Prior to June 25, 2002, there had been a number of drug-related arrests in the vicinity of the tire shop. Smith Dep. at 63-65.

According to defendants, on June 25, 2002, defendant Heriberto Bermudez[1] was part of a Street Narcotics Enforcement Unit ("SNEU") assigned to the 25th precinct in Harlem. Defendant Jorge Tobon was part of Bermudez's team, but defendant James South was not. Bermudez was assigned to an observation post in a building across the street from plaintiff's tire shop.

It should be noted that Smith denies that Bermudez was present at the scene, or that he personally observed the events on the street in front of the tire shop which led to Smith's apprehension. As evidence, Smith cites the facts that: (1) Bermudez and Smith did not personally meet until after Smith's arrival at the 25th Precinct; (2) Bermudez claims to have seen three officers arrest Smith, while Smith says he was arrested by only two; and (3) in earlier testimony Bermudez stated that he had witnessed an exchange of cash for

---

[1] The caption lists defendant's first name as "Heribert," but all the moving papers list it as "Heriberto."

cocaine, but in later testimony he stated that he did not see exactly what plaintiff gave the suspected buyer.  Plaintiff's 56.1 Statement ¶¶ 4-5.

At approximately 12:40 p.m., according to defendants, Bermudez was conducting surveillance when plaintiff, who was standing outside of his place of business, was approached by an individual later learned to be Jack Blenhyne.  Plaintiff and Blenhyne engaged in a brief conversation, lasting approximately two minutes.  Following the conversation, according to Bermudez, Blenhyne handed money to plaintiff and in return plaintiff handed an object to Blenhyne.  Bermudez Dep. at 15.

Plaintiff denies that Blenhyne handed him any money, stating that instead it was he who handed two dollars to Blenhyne to purchase a drill bit which was needed in the tire shop.  Smith Dep. at 72.  Plaintiff also denies handing anything else to Blenhyne.  Id. at 73.

According to defendants, after witnessing what appeared, based on his experience, to be a drug transaction, Bermudez provided his field team with a physical description of Blenhyne and plaintiff by radio.  Bermudez Dep. at 16-18.  Thereafter, Blenhyne was stopped by members of the SNEU team, who recovered eighty clear bags of cocaine from him.  Thereafter, officers of the SNEU team, including Tobon, apprehended plaintiff outside of his tire shop.  Defendants assert that the officers recovered one bag of cocaine from inside of plaintiff's shop.  Bermudez Memo Book, Smith-Williams Decl., Exh. C; Property Clerk's Invoice No. L291493, Smith-Williams Decl., Exh. D.  Plaintiff denies that cocaine was recovered from inside his shop, but does not attempt to

explain defendants' evidence to the contrary.

During his apprehension, plaintiff was handcuffed. In order to handcuff him, an officer "grabbed one arm, put it behind my back, handcuffed it, grabbed the other arm, put it behind my back and handcuffed me." Smith Dep. at 87. Plaintiff asked the officers to loosen the handcuffs because they were "extremely tight and painful" but they ignored his requests. Id. at 89-90. Plaintiff described the tight handcuffs as placing "slight pressure" on his wrists, like "something squeezing you," Id. at 89, and stated that the handcuffs were "slightly painful, very irritating." Id. at 90. Plaintiff also testified as to numbness in his wrists, but not in his fingers or hands. Id. at 94.

After plaintiff's arrest, Tobon and his partner drove him around in their van for several hours before taking him to the 25th Precinct. Id. at 93, 95-96. The officers did not pick up anyone else during those several hours, and plaintiff was handcuffed the entire time. Id. at 93-94.

Plaintiff's only alleged injury from the handcuffing is what he described as "red rings" around his wrists once the handcuffs were removed, lasting less than a day. Id. at 90, 95. Plaintiff did not request medical attention for his injuries while he was in the custody of the New York City Police Department ("NYPD"), nor did he seek medical treatment after he was released. Id. at 96-97, 109-10.

Plaintiff was charged with criminal sale of a controlled substance in the third degree, N.Y. Penal Law § 220.39(1), criminal sale of a controlled substance in the second degree, N.Y. Penal Law § 220.41(1), and criminal

- 4 -

possession of a controlled substance in the third degree, N.Y. Penal Law §
220.16(1).  A grand jury was convened, at which Bermudez provided testimony.
Bermudez Dep. at 26.  On or about July 1, 2002, the Grand Jury dismissed the
criminal charges against plaintiff.

### March 19, 2003 Incident

On March 19, 2003, Tobon arrested plaintiff for unlicensed operation of a
motor vehicle.  Smith Dep. at 145-47; Tobon Dep. at 19-20.  Plaintiff testified
at his deposition that the vehicle was not double-parked, he was sitting in the
passenger seat at the time, and the key was not in the ignition.  Smith Dep. at
146-47.

Defendants dispute this version of events, asserting that Tobon observed
plaintiff's car double-parked on the street and that plaintiff was sitting behind
the wheel on the driver's side, with the key in the ignition and the engine
running.  Tobon Dep. at 31; Misdemeanor Complaint in People v. Levon Smith,
Smith-Williams Reply Decl., Exh. F.

Plaintiff was charged in criminal court with Aggravated Unlicensed
Operation in the Third Degree, VTL511(1)(a), and Unlicensed Driving,
VTL509(1).  Id.  Plaintiff was released on his own recognizance, and made
several court appearances on account of his arrest, but the case against him
was eventually dismissed.  Smith Dep. at 157-59.

### May 23, 2003 Incident

In March 2003 and again in May 2003, a confidential informant working
with the NYPD entered plaintiff's shop and purchased a few bags of what was

purported to be cocaine. Affidavit in Support of Search Warrant, Smith-Williams Decl., Exh. G. At the time of purchase, the bags were retrieved from a container atop a shelf behind a counter in the tire shop, an area not accessible to the general public. Id. A short time after each purchase, Detective William Kern field-tested the substance purchased and confirmed that it was cocaine. Id.; Kern Dep. at 12-14.

It should be noted that plaintiff denies that cocaine was ever in his shop, arguing that the confidential informant rarely provided reliable information and did not make any sworn statement to the police, and that Kern did not personally observe either of the controlled buys. Plaintiff's 56.1 Statement ¶¶ 36-42.

Based on information received from the confidential informant and the two purchases of cocaine from plaintiff's business premises, Detective Kern submitted an affidavit in support of a search warrant for the tire shop. Smith-Williams Decl., Exh. G. On or about May 15, 2003, Judge William Harrington of the New York County Criminal Court issued a search warrant for plaintiff's place of business. Smith-Williams Decl., Exh. H. It should be noted that while plaintiff does not dispute that such a search warrant was issued, he does dispute its validity.

On May 23, 2003, a team of NYPD officers, including defendant James South, entered and searched plaintiff's place of business pursuant to the search warrant. South Dep. (Apr. 29, 2009) at 13-14. Plaintiff was out of town at the time, but an employee, Andrew Jones, was present. Jones Dep. at 44.

- 6 -

During the search, South discovered plastic wrappers containing cocaine inside a false wall in the bathroom of the tire shop.  South Dep. (Apr. 29, 2009) at 27, 68; South Dep. (Sep. 3, 2009) at 4-6; Smith-Williams Decl., Exhs. J, K.  Jones was arrested and, at the conclusion of the search, the tire store was padlocked. South Dep. (Apr. 29, 2009) at 28.

The police informed plaintiff that the shop was locked to prevent anyone other than plaintiff from entering the premises after the search.  Smith Dep. at 178-79.  However, the padlock used by the officers to lock the shop did not belong to plaintiff.  Plaintiff had no way to reopen the store and asserts that he was forced to go to the New York County Supreme Court to seek reentry after the police initially denied they had even entered the premises.

Defendants counter that no documentation was placed on the premises indicating that plaintiff could not reenter his business.  South Dep. (Apr. 29, 2009) at 34-35.  Plaintiff did not enter on the advice of counsel, because he was unsure whether it was "legal" to do so.  Smith Dep. at 180-81.  Nonetheless, sometime in late June or early July 2003, subsequent to the filing of an order to show cause in the New York County Supreme Court, Smith personally removed the padlock from the tire shop and reentered.  Smith Decl. ¶ 3.

Plaintiff asserts that when he reopened the tire shop a month or more after the search, he personally examined the contents and took an inventory. In the course of his examination, plaintiff discovered "some damage to some of my equipment and the walls and bathroom of the tire shop.  Specifically, there was damage to my air compressor, a jack and the wheel balancing machine.

Some of my brand new tire rims were either cracked or bent out of shape which made them useless."  Smith Decl. ¶¶ 5-6.

Defendants, citing Jones's testimony, contend that defendant South broke neither equipment nor tools in plaintiff's shop during the course of the search.  Jones Dep. at 74-76.  Plaintiff points out that Jones was arrested and driven away from the shop before the officers completed their search and was not the first to reenter, and therefore cannot testify completely as to the damage sustained.  See Jones Dep. at 57.

It is undisputed that defendant Bermudez was neither present nor personally involved in the execution of the search warrant at plaintiff's place of business on May 23, 2003.  South Dep. (Apr. 29, 2009) at 74; Search Warrant Pre-Execution Plan, Smith-Williams Decl., Exh. I.

Defendants assert that Tobon too was neither present nor personally involved in the execution of the search warrant.  See South Dep. (Apr. 29, 2009) at 73-74; Search Warrant Pre-Execution Plan, Smith-Williams Decl., Exh. I.  Plaintiff, however, submits a declaration from Johnetta Smith, his wife, stating that she saw Tobon in street clothes in front of the tire shop on May 23, 2003, following the arrest of Andrew Jones.  She knew Tobon because she had met him at the 25th Precinct in June 2002 when Smith was arrested.  Johnetta Smith Decl. ¶¶ 4-5.

Plaintiff also notes that South acknowledged in his Search Warrant Pre-Execution Plan that there was to be an undercover officer present at the execution of the search warrant, identified only as "U/C 7574."  Smith-

- 8 -

Williams Decl., Exh. I; see also South Dep. (Apr. 29, 2009) at 54.  Further,

South testified that he did not know Tobon.  Id. at 5.  Plaintiff therefore

speculates that the undercover officer present on May 23, 2003 was Tobon.

### The Instant Action

Plaintiff Levon Smith now brings a federal civil rights action pursuant to

42 U.S.C. § 1983 against defendants City of New York, Jorge Tobon, Heriberto

Bermudez, James South, and five unidentified "John Doe" police officers on the

basis of these three incidents.

With respect to the June 25, 2002 incident, plaintiff alleges that:

(1)   Defendants violated plaintiff's Fourth Amendment rights by
      unlawful seizure of his person and the use of excessive force;
(2)   Defendants prosecuted plaintiff for a drug transaction that never
      took place, with malice and without reasonable or probable cause
      to believe that plaintiff was guilty;
(3)   Defendants committed common law assault and battery by
      intentionally placing handcuffs too tightly on plaintiff;
(4)   Defendants falsely arrested plaintiff, with no reasonable or
      probable cause to believe that he had committed any crime;
(5)   Defendants converted plaintiff's property by confiscating plaintiff's
      cell phone and approximately $80 at the station house and never
      returning them.

With respect to the March 19, 2003 incident, plaintiff alleges that:

(1)   Defendant Tobon violated plaintiff's Fourth Amendment rights by
      arresting plaintiff and taking his license and registration without
      reasonable or probable cause;
(2)   Defendants criminally prosecuted plaintiff on the basis of a false
      accusation, with malice and without reasonable or probable cause
      to believe that plaintiff was guilty.

With respect to the May 23, 2003 incident, plaintiff alleges that:

(1)   Defendant South, acting in concert with Tobon and the John Doe
      defendants, committed unlawful search and seizure by conducting

a warrantless[2] search of plaintiff's business, destroying property therein, and padlocking the property thereafter;

(2)   Defendants committed common law trespass and conversion of plaintiff's property by searching plaintiff's business without his consent and damaging and removing some of its contents.

Plaintiff seeks compensatory damages in the amount of $50 million and punitive damages in the amount of $10 million.

Defendants now move for partial summary judgment pursuant to Fed. R. Civ. P. 56 with respect to the June 25, 2002 and May 23, 2003 incidents on the grounds that: (1) probable cause existed for plaintiff's arrest on June 25, 2002 and therefore plaintiff's false arrest claim should be dismissed; (2) plaintiff's claim for malicious prosecution relating to his June 25, 2002 arrest fails because he cannot satisfy the requisite elements; (3) defendants entered plaintiff's place of business on May 23, 2003 pursuant to a valid search warrant and therefore plaintiff's Fourth Amendment unlawful search and seizure claim should be dismissed; (4) plaintiff's excessive force claim fails as a matter of law; (5) defendants are entitled to qualified immunity; (6) plaintiff cannot establish a claim for municipal liability against the City of New York; and (7) plaintiff's state law claims should be dismissed due to the absence of any viable federal claims and/or due to a failure to satisfy the conditions precedent to suit.   Defendants do not move for summary judgment on plaintiff's claims stemming from the March 19, 2003 incident.

---

[2] The complaint asserts that this search was conducted without a warrant, but plaintiff now appears to argue only that the warrant was invalid due to lack of probable cause.  See Section II.A below.

Plaintiff cross-moves for partial summary judgment with respect to liability as to the March 19, 2003 unlawful search and seizure and malicious prosecution claims.

## Legal Standard

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making the summary judgment determination, the court must draw all justifiable inferences in favor of the non-movant. Id. at 255. However, the non-movant is obligated to "set out specific facts showing a genuine issue for trial," and "may not rely merely on allegations or denials" to support its opposition to the motion. Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I. Federal Claims with respect to the June 25, 2002 Incident

A. False Arrest

The Second Circuit has held that a Section 1983 claim for false arrest, resting on the Fourth Amendment right to be free from unreasonable seizures, is substantially the same as a claim for false arrest under New York law. See Weyant v. Okst, 101 F.3d 845, 852 (2d. Cir. 1996). In order to state a claim for

false arrest under New York law, plaintiff must prove all of the following four elements: (1) the defendants intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); Broughton v. State, 37 N.Y. 2d 451, 456 (1975). Defendants argue that, for the purposes of this motion, even if plaintiff satisfied the first three prongs, his claim for false arrest must fail because his confinement was privileged.

The presence of probable cause is a complete defense to an action for false arrest whether under Section 1983 or state law. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999); Morel v. Crimaldi, 683 N.Y.S. 2d 22, 24 (N.Y. App. Div. 1st Dept. 1998). To determine whether an officer had probable cause to arrest an individual, "we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quotations and citations omitted).

Courts in this circuit have routinely found probable cause where an officer arrests an individual whom the officer believes, based on his or her own observation, engaged in a hand-to-hand drug sale. See, e.g., United States v. Washington, 02 Cr. 1574 (LTS), 2003 WL 21250681 (S.D.N.Y. May 29, 2003) (probable cause to arrest where officer observed arrestee engage in suspected drug transaction in drug-prone neighborhood and narcotics were subsequently recovered from alleged buyer); Sam v. Brown, 2002 WL 31102644 (E.D.N.Y.

- 12 -

September 10, 2002) (probable cause to arrest even though arrestee was not in possession of drugs at time of arrest where officer observed arrestee exchange small object for money with an alleged buyer, and the buyer was later found to be in possession of drugs).

### 1. Defendant Bermudez

#### a. Presence at the Scene of the Sale

On the date of arrest, according to defendants, Bermudez was assigned to an observation post in a building across the street from plaintiff's business. Plaintiff, however, argues that Bermudez was in fact not present in the vicinity of the tire shop on that day and therefore could not have observed any transaction between Smith and Blenhyne.

Summary judgment should only be granted if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c)(2). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Here, it was the observations of Bermudez which led directly to plaintiff's arrest. If Bermudez was actually not present to witness the purported drug deal, that could affect the determination of probable cause and thereby the outcome of the suit. Therefore there is a dispute here about a material fact.

A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Here, defendants present as evidence of Bermudez's presence: (1) the Arrest Report of Levon Smith, Smith-Williams Decl., Exh. B; (2) Bermudez's Memo Book, Smith-Williams Decl., Exh.

C; and (3) Bermudez's own lengthy and detailed deposition. Plaintiff presents as evidence of Bermudez's absence the facts that: (1) Bermudez and Smith did not personally meet until after Smith's arrival at the 25th Precinct; (2) Bermudez witnessed three officers arrest Smith, while Smith asserts he was arrested by only two; and (3) in the criminal court complaint Bermudez stated that he had witnessed an exchange of cash for cocaine, but in his deposition he testified that he did not see exactly what plaintiff gave Blenhyne in return for the cash. Based on the above evidence, and drawing all reasonable inferences in the non-movant's favor, it does not appear that a reasonable jury could conclude that Bermudez was not present with the team of officers conducting surveillance near plaintiff's shop. Therefore, there is no genuine issue as to the material fact of Bermudez's presence, and summary judgment is not barred.

### b. Probable Cause to Arrest

Defendants argue that there was probable cause to arrest plaintiff on June 25, 2002 based on Bermudez's observation of what appeared to be a drug sale by plaintiff in a high-crime area.

Plaintiff was arrested as a direct result of Bermudez's observation and the subsequent discovery of cocaine in the possession of the suspected buyer, Blenhyne. Plaintiff makes much of the fact that the object Bermudez saw plaintiff hand Blenhyne was smaller than the eighty clear bags that were later recovered, and that plaintiff had only $90 on him at the time of his arrest, which is presumably less than the price of such an amount of drugs. However, what is material here is that Bermudez believed, based on observation and

experience, that a drug transaction had taken place, and that the suspected buyer was found to be in possession of a significant amount of cocaine moments later.

As noted above, courts in this circuit have routinely found probable cause to arrest when the officer believes, based on his or her own observation and experience, that an individual was engaged in a hand-to-hand drug sale. In conjunction with the subsequent discovery of cocaine on the suspected buyer, there was clearly probable cause for arrest in this instance, and because probable cause is a complete defense to a false arrest claim under Section 1983, see Covington, 171 F.3d at 122, the false arrest claim against Bermudez is dismissed.

### 2. Defendant Tobon and the Five John Doe Officers

The Second Circuit has held that "for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'" Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003) (quoting Illinois v. Andreas, 463 U.S. 765, 771 n. 5 (1983)).

Here, Bermudez, Tobon, and the five John Doe officers were members of the same narcotics team conducting surveillance in the area surrounding plaintiff's shop. Bermudez witnessed what he believed to be a drug sale, and this knowledge is imputed to Tobon and the five John Doe officers. As noted above, this knowledge, in conjunction with the recovery of drugs from the alleged purchaser, is sufficient to establish probable cause.

- 15 -

Because probable cause is a complete defense to a false arrest action, plaintiff's claim for false arrest against defendant Tobon and the five John Doe officers is also dismissed.

### 3. Defendant South

It is well settled that personal involvement is a prerequisite to liability under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Here, it is undisputed that defendant South was not personally involved in plaintiff's arrest on June 25, 2002. Accordingly, plaintiff does not have a viable false arrest claim against South.

### B. Malicious Prosecution

In order to state a claim for malicious prosecution, a plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (quotations and citations omitted). It is recognized that a heavy burden is placed on malicious prosecution plaintiffs. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004).

### 1. Initiation of a Criminal Proceeding

A criminal proceeding was initiated against plaintiff following his June 25, 2002 arrest. However, this proceeding was initiated not by defendants, but by the New York County District Attorney's Office. In Alcantara v. City of New York, 646 F. Supp. 2d 449, 459 (S.D.N.Y. 2009), the court noted that "once a

- 16 -

criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." See also Rohman v. New York City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000) ("[o]ne who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding").

In the present case, an Assistant District Attorney ("ADA") independently determined to prosecute plaintiff. Nothing in the record suggests that Tobon discussed the arrest with an ADA, or that he testified before the grand jury. Bermudez's only involvement in the prosecution was relaying to the ADA his observations and the facts known to him regarding plaintiff's arrest and testifying before the grand jury. The District Attorney's office could have declined to prosecute, but made the independent determination that there was reason to go forward, and that Bermudez's testimony was necessary. Accordingly, plaintiff cannot establish that anyone other than the New York County District Attorney's Office, which is not a party to this action, initiated the prosecution against him.

## 2. Probable Cause

A finding of probable cause defeats a malicious prosecution claim. See Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994). Once probable cause to arrest is established, a claim for malicious prosecution is barred "unless plaintiff can demonstrate that at some point subsequent to the arrest,

additional facts came to light that negated probable cause." Dukes v. City of New York, 879 F. Supp. 335, 342 (S.D.N.Y. 1995) (citing Oakley v. Rochester, 421 N.Y.S.2d 472 (4th Dep't 1979)). "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) (citing Colon v. City of New York, 60 N.Y.2d 78, 82 (1983)).

As set forth above, there was probable cause to arrest plaintiff based on Bermudez's observation of what he perceived, based on experience, to be a drug sale and the subsequent recovery of drugs from the suspected buyer. Plaintiff has presented no facts which came to light subsequent to the arrest that would negate probable cause. Furthermore, based on these facts, a reasonably prudent person would likely believe the plaintiff to be guilty. As such, there was probable cause to prosecute.

3. Malice

New York law requires the plaintiff to establish that the defendants commenced the criminal proceeding due to a wrong or improper motive, meaning something other than a desire to see the ends of justice served. Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). Further, malice may only be inferred where probable cause to initiate a proceeding is "totally lacking." Sulkowska v. City of New York, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001).

- 18 -

Here, plaintiff presents no evidence that defendants Bermudez and
Tobon commenced the criminal proceeding in the first place, let alone
commenced it due to a wrong or improper motive. Furthermore, as noted
above, there was probable cause for both the arrest and the prosecution of
plaintiff, and accordingly, malice may not be inferred.

### 4. Summary Judgment on Malicious Prosecution Claim

Of the four elements required to state a claim for malicious prosecution,
Smith can establish only one—the termination of the proceeding in plaintiff's
favor. Therefore, defendants are granted summary judgment on plaintiff's
claim for malicious prosecution.

### C. Excessive Force

Plaintiff alleges a claim for excessive force, asserting that defendant
Tobon applied handcuffs to his wrists too tightly when he was arrested on June
25, 2002. Compl. ¶ 41. Plaintiff does not allege that anyone other than Tobon
used excessive force against him. Id. ¶ 22.

In order for an excessive force claim to rise to the level of a constitutional
violation cognizable pursuant to § 1983, the plaintiff must show that the force
used was objectively unreasonable under the Fourth Amendment. Richardson
v. New York City Health and Hospitals Corp., 05 Civ. 6278 (RJS), 2009 WL
804096, at *10 (S.D.N.Y. Mar. 25, 2009) (citing Graham v. Connor, 490 U.S.
386, 397 (1989)). In determining the reasonableness of an officer's actions, the
court must apply a balancing test that measures the intrusion on the
individual's Fourth Amendment interests against the government's interests.

Id. at 396.  The reasonableness determination cannot be made in hindsight,

but must be judged from the officer's perspective in the heat of the moment.

Saucier v. Katz, 533 U.S. 194, 205 (2001), overruled on other grounds by

Pearson v. Callahan, 129 S.Ct. 808 (2009).  The Supreme Court has recognized

that the effectuation of a custodial arrest "necessarily carries with it the right

to use some degree of physical coercion . . . ."  Graham, 490 U.S. at 396.

In evaluating the reasonableness of a tight handcuffing claim, the court

should consider whether: "1) the handcuffs were unreasonably tight; 2) the

defendants ignored the arrestee's pleas that the handcuffs were too tight; and

3) the degree of injury to the wrists."  Esmont v. City of New York, 371 F. Supp.

2d 202, 215 (E.D.N.Y. 2005).  Where an arrestee suffers de minimis injuries,

summary judgment is appropriate.  Id.  Courts in this Circuit have consistently

held that an injury is de minimis when it is temporary and/or minor in

severity.  See, e.g., Richardson, 2009 WL 804096 (short-term pain, swelling,

and bruising does not amount to excessive force); Hamlett v. Town of

Greenburgh, 2007 WL 119291 (S.D.N.Y. Jan. 17, 2007) (brief numbness from

tight handcuffing insufficient to establish excessive force); Vogeler v. Colbath,

2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) (claims of minor discomfort from

handcuffing not actionable).

Here, plaintiff testified that during his arrest, in accordance with Tobon's

instruction, plaintiff placed his hands against a police van and Tobon "grabbed

one arm, put it behind my back, handcuffed it, grabbed the other arm, put it

- 20 -

behind my back and handcuffed me." Smith Dep. at 87. Plaintiff testified that

it took approximately one minute for Tobon to handcuff him. Id. at 88.

Plaintiff testified that he asked the officers to loosen the handcuffs

because they were "extremely tight and painful," but they ignored his requests.

However, when questioned at the deposition as to exactly what he felt, plaintiff

described experiencing "slight pressure" on his wrists, like "something

squeezing you," id. at 89, and stated that the handcuffs were "slightly painful,

very irritating." Id. at 90. Plaintiff did testify as to numbness in his wrists, but

not in his fingers or hands. Id. at 94. A handcuffing cannot be expected to be

comfortable, and there is nothing in plaintiff's testimony to suggest that this

particular handcuffing was unreasonably tight. See Grant v. City of New York,

500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007) ("Frequently, a reasonable arrest

involves handcuffing the suspect, and to be effective handcuffs must be tight

enough to prevent the arrestee's hands from slipping out.").

Further, plaintiff's only alleged injury from the handcuffing is what he

described as "red rings" around his wrists once the handcuffs were removed.

Smith Dep. at 90, 95. Plaintiff stated that these lasted less than a day. Id. at

95. Plaintiff never asked defendants Bermudez or Tobon, or any other NYPD

officer, to obtain medical treatment for him. Id. at 96-97, 109-110. He testified

that he did not request medical attention while in the prisoner van because "[i]t

didn't appear to be at that point where I think I needed medical assistance . . .

." Id. at 97. Further, plaintiff did not complain about his alleged injuries

during a routine medical screening at the Manhattan Detention Center because

- 21 -

he "wasn't in pain anymore."  Id. at 109.  Plaintiff also testified that he saw a
private doctor in July 2002 following his release from prison and did not
complain about any injuries at that time either.  Id. at 108, 109-10.

Therefore, under the framework for evaluating the reasonableness of a
tight handcuffing claim, as laid out in Esmont, 371 F. Supp. 2d at 215, it does
not appear from plaintiff's own testimony that the handcuffs were
unreasonably tight, and plaintiff's injuries were clearly de minimis.  Further, it
appears that the force used by Tobon was objectively reasonable under the
circumstances.  See Graham, 490 U.S. at 397.  Accordingly, defendants are
granted summary judgment on the claim for excessive force.

II.  Federal Claims with respect to the May 23, 2003 Incident

Plaintiff alleges that, on or about May 23, 2003, his place of business
was unlawfully searched and seized in violation of the Fourth Amendment.  See
Compl. ¶¶ 77–80.  Plaintiff also alleges that the search of his business was
conducted in an unduly destructive manner.  See Compl. ¶ 38.

The only defendant undisputedly present at plaintiff's place of business
on May 23, 2003 and involved in the search was defendant South.  South Dep.
at 73-74.  Since Bermudez was not personally involved in the search, plaintiff
cannot maintain a claim against him for the alleged unlawful search and
seizure of his business, or for the allegedly destructive search.  Wright, 21 F.3d
at 501.  Tobon's presence on May 23, 2003 is disputed.  See Decl. of Johnetta
Smith.

- 22 -

## A. Unlawful Search

Plaintiff's unlawful search claim appears to have been based initially on the misconception that defendants did not obtain a warrant before searching the tire shop. See Compl. ¶ 77. However, it is clear from the evidence that defendants did, in fact, have a search warrant authorizing the entry into and search of plaintiff's business. Search Warrant, Smith-Williams Decl., Exh. H. Apparently recognizing this, plaintiff argues for the first time in his memo in opposition that defendants have failed to demonstrate that the confidential informant on whose information they relied to obtain the search warrant was reliable. There are a number of flaws in this line of argument.

First, plaintiff has failed to fulfill the requirements of Fed. R. Civ. P. 8(a)(2), providing that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Here, plaintiff neglected to plead in his complaint any facts at all related to this claim, providing defendants no notice that plaintiff intended to challenge the validity of the warrant.

Second, plaintiff's contention that defendants are obligated to demonstrate that the search warrant was obtained upon reliable information is incorrect. Plaintiff's only support for this argument is an overruled Supreme Court case, Aguilar v. Texas, 378 U.S. 108 (1964), overruled by Illinois v. Gates, 462 U.S. 213 (1983). The applicable case law establishes that, on the contrary, there is a presumption of validity with respect to the affidavit supporting a search warrant. Franks v. Delaware, 438 U.S. 154, 171 (1978). A

plaintiff challenging the validity of a search warrant faces a heavy burden and must demonstrate that "the officer submitting the probable cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotations and citations omitted).  Plaintiff here makes no such allegations and has therefore failed to overcome the presumptive validity of the affidavit and thus the search warrant in this case.

B. Unlawful Seizure

The Fourth Amendment reads, in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

Plaintiff here alleges that defendants unlawfully seized his business between May 23 and June 12, 2003.  Compl. ¶¶ 78–79.  Specifically, plaintiff alleges that NYPD officers padlocked his shop following the search on May 23, 2003, and that as a result, he was unable to enter or transact any business there until after he filed an order to show cause in state court.  Id. ¶¶ 77-80.

However, plaintiff testified that when he inquired, the NYPD explicitly indicated that the business was only padlocked for security reasons, in order to prevent anyone other than plaintiff from entering the premises after the search. Smith Dep. at 178-79.  In addition, plaintiff testified that he did not enter his

shop following the May 23, 2003 search not because there was any indication from the NYPD that he could not, but because he himself did not know whether it was "legal" to enter and because he was advised by his counsel not to do so. Id. at 180-81. As such, it seems that any "seizure" here was merely a result of plaintiff's uncertainty as to whether he was permitted to reenter following the search.

C. Unduly Destructive Search

Plaintiff alleges that his place of business was searched in an unduly destructive manner.  Compl. ¶¶ 38, 77.  "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful . . . ."  United States v. Ramirez, 523 U.S. 65, 71 (1998).  However, "it is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.' " Cody v. Mello, 59 F.3d 13, 16 (2d Cir. 1995) (quoting Dalia v. United States, 441 U.S. 238, 258 (1979)).  Further, "[b]efore any due process liability can be imposed for property damage occurring in a lawful search, it must be established that the police acted unreasonably or maliciously in bringing about the damage."  Cody, 59 F.3d at 16.

In support of his claim that his business was searched in an unduly destructive manner, plaintiff relies partly on the deposition of his employee, Andrew Jones, who was present during the search.  Specifically, plaintiff points to Jones's description of the actions of the police as "knocking over everything," "tearing it up," and "wrecking it."  However, when specifically asked during his

- 25 -

deposition in what manner the officers were "tearing up" the place, Jones

responded: "Knocking down the tires. Knocking over the chairs. Things of that

nature. That's all I remember." Jones Dep. at 51. Jones's testimony does not

paint a picture of an unduly destructive search. Plaintiff himself testified that,

upon his return to the shop, he discovered damage to "some of my equipment

and the walls and bathroom of the tire shop. Specifically, there was damage to

my air compressor, a jack and the wheel balancing machine. Some of my

brand new tire rims were either cracked or bent out of shape which made them

useless." Smith Decl. ¶¶ 5-6.

As noted above, the lawful execution of a search warrant may entail a

certain degree of damage. Dalia, 441 U.S. at 258. Here, plaintiff has not

produced any documentary evidence to support his allegations that the officers

broke his tools and machines. He has not provided any photos of broken tools

or any bills or receipts to document any repairs. On a motion for summary

judgment, the court must draw all justifiable inferences in favor of the non-

movant. However, the non-movant is obligated to "set out specific facts

showing a genuine issue for trial," and "may not rely merely on allegations or

denials" to support its opposition to the motion. Fed. R. Civ. P. 56(e)(2). Here,

plaintiff relies entirely on allegations, and thus fails to demonstrate a genuine

issue for trial as to whether defendants acted "unreasonably or maliciously," as

required to state a Fourth Amendment claim for property damage occurring in

the course of a lawful search. Cody, 59 F.3d at 16. Therefore, defendants are

granted summary judgment on this claim.

III.  State Law Claims

### A.  False Arrest, Malicious Prosecution, and Assault and Battery

Because plaintiff's federal claims for false arrest, malicious prosecution, and excessive force are dismissed on summary judgment, as outlined above, to the extent plaintiff brings analogous state law claims, those claims are dismissed as well because the elements are the same.

"The elements of a federal civil rights claim based upon an allegation of false arrest are the same as the elements of a false arrest claim under New York law." Mason v. Village of Babylon, 124 F. Supp. 2d 807, 814 (E.D.N.Y. 2000). Similarly, "[t]he elements of . . . malicious prosecution under § 1983 are substantially the same as the elements under New York law.  Therefore, the analysis of the state and the federal claims is identical." Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003) (internal quotations and citations omitted).  Finally, "the test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim." Pierre-Antoine v. City of New York, 04 Civ. 6987 (GEL), 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006).

Therefore, for the same reasons plaintiff cannot establish a federal claim for false arrest, malicious prosecution, or excessive force, he cannot establish a state claim for false arrest, malicious prosecution, or assault and battery.

### B. Conversion and Trespass

Defendants argue that plaintiff's state law claims for conversion and trespass concerning the alleged seizure of his business on May 23, 2003 must

be dismissed because plaintiff failed to comply with the timely filing requirements of New York's General Municipal Law.

New York's General Municipal Law §§ 50-e and 50-i require that a plaintiff asserting state law tort claims against a municipal entity or its employees acting in the scope of employment: (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues. Id. In addition, General Municipal Law § 50-i(b) requires that "it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice [of claim] and that adjustment or payment thereof has been neglected or refused . . . ." Id.

Plaintiff acknowledges that he missed the filing deadlines under New York law, but notes that he moved the New York County Supreme Court for leave to file a late notice of claim, and that court granted relief. See Okoli Decl., Exhs. 24, 25. However, upon closer examination, plaintiff did not apply for, and the court did not grant, relief to file a late notice of claim for conversion and trespass. The court ordered only that "the proposed notice of claim annexed to Petitioner's papers as an exhibit shall be deemed timely served . . . ." Okoli Decl., Exh. 25. This proposed notice of claim includes only claims for: "False arrest/imprisonment; Unlawful Search and Seizure; Excessive force; Malicious prosecution; Abuse of process; violation of civil and constitutional rights." Okoli Decl., Exh. 24. Therefore, plaintiff never received leave to file a late notice of claim with respect to claims for conversion and trespass.

- 28 -

The notice of claim requirements are strictly construed, and a plaintiff's "failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims." Warner v. Village of Goshen Police Dep't., 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003); see also Hyde v. Caputo, 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001) (quoting Davidson v. Bronx Municipal Hosp., 64 N.Y.2d 59, 62 (1984)).

In the instant case, plaintiff has failed to comply with New York State law because he failed to file a timely notice of claim regarding conversion and trespass with respect to the events of May 23, 2003. The limitations periods under General Municipal Law §§ 50-e and 50-i for this incident expired nearly seven years ago. Therefore, defendants are entitled to summary judgment on the conversion and trespass claims.

## IV.  Qualified Immunity

Police officers, like other government officials performing discretionary functions, are shielded from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Therefore, even where a police officer acts without probable cause, he may be entitled to qualified immunity if he can demonstrate "arguable probable cause" which exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence

could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quotations and citations omitted).

A.   False Arrest: June 25, 2002

As noted above, there was probable cause to arrest plaintiff for criminal sale of a controlled substance on June 25, 2002.  Defendants argue that even if it were determined that Tobon and Bermudez had acted without probable cause, they would still be entitled to qualified immunity because under the circumstances it was objectively reasonable to believe that probable cause existed.

Here, Officer Bermudez witnessed plaintiff exchange what Bermudez believed was drugs for money.  Bermudez Dep. at 13-14.  Following the exchange, the alleged purchaser was found to be in possession of cocaine and was arrested.  Thereafter, plaintiff was also arrested.  Plaintiff's deposition testimony partially corroborates Bermudez's version of events.  Plaintiff confirms that Blenhyne approached him outside of his tire store, that they engaged in a short conversation, and that there was an exchange of money between himself and Blenhyne, following which Blenhyne was arrested for cocaine possession.  Smith Dep. at 70-74.  Further, plaintiff admits that there had been at least two drug-related arrests in the vicinity of his business prior to his own arrest.  Id. at. 63–64.  Based on this set of facts, it was objectively reasonable for Bermudez to believe that plaintiff had in fact engaged in a drug transaction and that probable cause existed to arrest him.  Bermudez can

- 30 -

thus demonstrate "arguable probable cause" and is therefore entitled to qualified immunity.

Detective Tobon is also entitled to qualified immunity for his participation in plaintiff's June 25, 2002 arrest. "[W]here law enforcement authorities are cooperating in an investigation . . . the knowledge of one is presumed shared by all." Andreas, 463 U.S. at 771 n.5. Therefore, it was objectively reasonable for Tobon to arrest plaintiff after receiving information, via a radio communication from Bermudez, that plaintiff had engaged in a suspected drug transaction. Tobon can thus demonstrate "arguable probable cause" and is entitled to qualified immunity.

B. Excessive Force: June 25, 2002

Defendants argue that Tobon is also entitled to qualified immunity from plaintiff's excessive force claim for tight handcuffing. Defendants note that the Second Circuit has stated that there is no constitutional right not to be handcuffed during the course of an arrest. Soares, 8 F.3d at 922. Further, defendants argue, it is objectively reasonable for an officer to handcuff an arrestee while effectuating a lawful arrest (citing Grant, 500 F. Supp. 2d at 217). Here, defendants argue, because plaintiff's arrest was supported by probable cause, it was objectively reasonable to handcuff plaintiff during the course of his arrest, and as such, Tobon is entitled to qualified immunity.

However, the Second Circuit has explicitly rejected this line of argument, holding that "[a]lthough handcuffing will be the reasonable course in many, if not most arrest situations, we do not accept the principle that handcuffing is

- 31 -

per se reasonable . . . . In determining whether the force used to effect a particular seizure is reasonable, a court must evaluate the particular circumstances of each case." Soares, 8 F.3d at 921.

In evaluating the particular circumstances of this case, it appears, as described more fully above, that the force used by Tobon was objectively reasonable from the officer's perspective in the heat of the moment. See Graham, 490 U.S. at 397; Saucier, 533 U.S. at 205. Therefore, even if the court were to determine that Tobon acted without probable cause with respect to the force used in arresting plaintiff, Tobon could likely demonstrate "arguable probable cause," and thus qualified immunity. See Escalera, 361 F.3d at 743.

C.   Unlawful Search: May 23, 2003

Here, as noted above, the valid search warrant authorizing the officers to enter and search plaintiff's place of business presumptively established probable cause to do so. Even if plaintiff were able to successfully challenge the validity of the search warrant, and thus probable cause, defendant South would nonetheless be entitled to qualified immunity under a theory of "arguable probable cause."

First, South did not obtain the search warrant, nor was the application for the search warrant submitted by him. Affidavit in Support of Search Warrant, Smith-Williams Decl., Exh. G. The application was submitted by Detective William Kern, who is not a party to this action, based on his own previous experiences and knowledge concerning plaintiff's tire shop. Id.

Second, South testified that he received the search warrant from his supervising officer, that he reviewed the warrant, and that he entered and searched plaintiff's place of business pursuant to such warrant as he was instructed to do by his supervisor. South Dep. (Apr. 29, 2009) at 7-14. There is no evidence that South had any indication that the warrant was obtained on the basis of falsehoods or incomplete information. In fact, South testified that he never saw the search warrant affidavit. Id. at 9. Thus, it was objectively reasonable for South to search plaintiff's place of business pursuant to what he had no reason to doubt was a valid search warrant, and he is entitled to qualified immunity.

## V. Municipal Liability

In order to prevail on a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978); Sarus v. Rotundo, 831 F.2d 397, 400 (2d Cir. 1987). A municipality may not be held liable under Section 1983 on the basis of respondeat superior. Monell, 436 U.S. at 691. Rather, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985)).

Plaintiff has failed to identify any such municipal policy or custom of defendant City of New York, alleging only that "the individual defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the City and State of New York, and under the authority of their office as police officers." Compl. ¶ 19. Defendants cite to Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993) for the proposition that to state a claim for municipal liability under Section 1983, a plaintiff must do more than merely state that a municipal policy or custom exists. See id. at 100 ("the mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference . . . .").

There is some debate as to whether Dwares is still good law on this issue following the Supreme Court's opinion in Leatherman v. Tarrant County, 507 U.S. 163 (1993). Some courts in this Circuit have interpreted Leatherman as overruling or abrogating Dwares only on other grounds. See, e.g., Cerbelli v. City of New York, 600 F. Supp. 2d 405, 411 (E.D.N.Y. 2009); Leon v. City of New York, 09 Civ. 8609 (WHP), 2010 WL 2927440, *5 (S.D.N.Y. Jul. 1, 2010). Other courts have interpreted Leatherman as adopting the Ninth Circuit rule that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir. 1988); see, e.g., Hughes v. City of Hartford, 96 F. Supp. 2d 114,

116-17 (D.Conn. 2000); <u>Simpkins v. Bellevue Hosp.</u>, 832 F.Supp. 69, 73-74 (S.D.N.Y. 1993).  However, even under the liberal pleading standard urged by the second set of cases, plaintiff has failed to state a claim for municipal liability because he fails to allege even that the individual officers' conduct conformed to official policy, custom, or practice.

More importantly, plaintiff cannot establish municipal liability on the part of the City because he cannot prove any underlying violation of a constitutional right.  As discussed above, plaintiff's constitutional claims fail, as there was probable cause for his arrest and prosecution, he was not subjected to excessive force, and there was a valid search warrant authorizing the entry and search of his business.  <u>See Khan v. Ryan</u>, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001) ("If there is no underlying constitutional violation by a municipal official, the municipality is not liable [under § 1983].").  Plaintiff has thus failed to plead sufficient facts to state a viable theory of liability with respect to defendant City of New York, and defendants are granted summary judgment on this claim.

## PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff cross-moves for partial summary judgment as to liability with respect to his claims for false arrest[3] and malicious prosecution in connection with his March 19, 2003 arrest.

---

[3] Plaintiff's complaint asserts a cause of action for unlawful search and seizure of both plaintiff's person and his property in connection with the March 19, 2003 incident.  He now moves for summary judgment with respect to the false arrest portion of this claim, but does not appear to move for summary judgment with respect to the unlawful search and seizure of his property.  Even if such a motion were made, it would be denied for the same reasons outlined below.

The parties' versions of events with respect to this incident vary widely. Specifically, plaintiff asserts that he was seated in the passenger seat of his car, which was properly parked in front of the tire shop, that the engine was not running, and that the key was not in the ignition when he was approached by defendant Tobon.  Smith Dep. at 146-47.  Plaintiff thus alleges that Tobon arrested him for operating a vehicle with a suspended license despite the fact that he was not driving and the engine was not running.  Compl. ¶¶ 65, 68-70.

By contrast, Tobon has testified that he approached plaintiff only after he observed his double-parked vehicle, and upon approach discovered plaintiff sitting behind the wheel with the key in the ignition and the engine running. Tobon Dep. at 31; Misdemeanor Complaint, Smith-Williams Reply Decl., Exh. F.  A computer check of plaintiff's driver's license revealed that the license was suspended.  Id.  Based on these facts, plaintiff was arrested and charged with aggravated unlicensed operation in the third degree and unlicensed driving.  Id.

The existence of probable cause is a complete defense to an action for false arrest or malicious prosecution.  Covington, 171 F.3d at 122; Murphy, 118 F.3d at 947.  Considering that the parties' accounts are contradictory with respect to a number of facts necessarily underlying the probable cause determination, there are genuine issues of material fact surrounding plaintiff's March 19, 2003 arrest which preclude the granting of summary judgment on these claims.

## **Conclusion**

For the reasons outlined above, defendants' motion for partial summary

judgment is granted and plaintiff's cross-motion for partial summary judgment is denied.  This opinion resolves the motions listed as document numbers 19 and 25 in this case.

   SO ORDERED.

Dated: New York, New York
   August 27, 2010

               Thomas P. Griesa
               U.S.D.J.