UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
LEVON SMITH,                                    :
                                                :
                        Plaintiff,              :
                                                :      04 Civ. 3286 (TPG)
         – against –                            :
                                                :
POLICE OFFICER JORGE TOBON,                     :      **OPINION**
Shield #29637                                   :
                                                :
                        Defendant.              :
                                                :
------------------------------------------------x

Plaintiff Levon Smith sued defendant, police officer Jorge Tobon, pursuant to 42 U.S.C. § 1983 for false arrest and malicious prosecution. The case was brought to trial on October 18, 2011. After a two-day trial, the jury returned a verdict in defendant's favor.

Plaintiff now moves for a new trial on the basis of the court's jury instructions.

The motion is denied.

Facts

Background

This case arises from three encounters between plaintiff and defendant, occurring on June 25, 2002, March 19, 2003, and May 23, 2003. Plaintiff initially made claims with respect to all three incidents. In an opinion dated August 27, 2010, the court granted defendant's motion for summary judgment

with respect to the June 25, 2002, and May 23, 2003 incidents.  Plaintiff had also moved for summary judgment with respect to the March 19, 2003 incident.  The court denied plaintiff's motion.  Therefore, the only incident remaining in this case is the incident of March 19, 2003.

     Plaintiff claims that on March 19, 2003, he was sitting on the passenger's side in his stopped vehicle, which was properly parked in front of his tire shop business, and that the key was not in the vehicle's ignition.  Defendant and another officer approached the vehicle and asked plaintiff for his license and registration.  Defendant told plaintiff that his license had been suspended about a week earlier because of an unpaid parking ticket.  Defendant and his partner took plaintiff and his vehicle to the 25th Precinct station house, where plaintiff was processed and taken to court after over 20 hours in police custody.  Plaintiff was charged with operating a vehicle with a suspended license, and was released on his own recognizance.  Plaintiff continued to make court appearances until about December 2003 when the complaint was dismissed against him.  Plaintiff alleges that defendant's actions on March 19, 2003, were retaliation for the fact that plaintiff was not ultimately indicted following his drug arrest on June 25, 2002.  That arrest was allegedly made by defendant.

     Defendant disputes plaintiff's version of the facts, claiming that plaintiff's vehicle was double-parked, that plaintiff was behind the wheel on the driver's side of the vehicle, with the key in the ignition and the engine running.  Defendant denies that he had any retaliatory motive for the arrest.

As noted above, plaintiff's claims were for false arrest and malicious prosecution.  On the false arrest claim, the only issue was whether defendant had probable cause to make the arrest.  On the malicious prosecution claim, the issues were probable cause, malice, initiation of prosecution, and deprivation of liberty.  Because of the disputed nature of the facts, the claims turned almost entirely on plaintiff's and defendant's credibility.

As noted above, the court held a two-day jury trial, beginning on October 18, 2011, which resulted in a verdict for defendant.  The only eyewitnesses to testify at trial were plaintiff and defendant.[1]

The Current Motion

Plaintiff now moves, pursuant to Fed. R. Civ. P. 59(a)(1)(A), for a new trial on the ground that the court's jury instructions were improper.  Specifically, plaintiff claims that the court failed to properly define probable cause, gave an improper missing witness charge, and gave deficient and erroneous charges with respect to the malicious prosecution claim, specifically initiation of prosecution and deprivation of liberty.

   1.  Probable Cause

With respect to probable cause, the court instructed the jury as follows:

> A police officer can make an arrest if he has probable cause to believe the person committed a crime.  He doesn't have to have proof beyond a reasonable doubt.  He is not conducting a trial; he is conducting an arrest.  If he has probable cause to believe that the person he is arresting committed a crime, then that is a valid arrest.  It is not a false arrest; it is a valid arrest.  Now very often he must rely on information which is less than certain.

---

[1] Plaintiff's wife also testified at trial on the issue of damages only.

>Let's suppose that someone is shot and is lying in the street and the person who does the shooting runs away and let's suppose that the bystanders find a policeman and call the policeman over and tell him that John Jones shot the person and has run away. Now, the officer didn't see the crime. The officer doesn't literally know if their identification is correct. Maybe there are several people around and they say it was John Jones who did this shooting and ran away. The officer doesn't literally know for a certainty, but if he receives what he can reasonably consider as reliable information, then we say that he has probable cause to go after the person John Jones, and if he can find him, he can arrest him.
>
>But here, the standard has been told to you and it is the standard that this arrest was proper if there was probable cause to believe that violations of law occurred and were committed by Mr. Smith. But we are really not dealing with probabilities, so I don't want you to get caught up on that. Mr. Smith has admitted that his license had been suspended because he had not paid a parking ticket. That's a certainty.
>
>As far as whether he was operating his vehicle on 116th Street, that either happened or it didn't; either it was observed by Officer Tobon or it wasn't. Officer Tobon says he observed the operation of the vehicle and that's his testimony. Mr. Smith has a very different version. So we are not dealing with probabilities in the sense of the shooting I talked about. This is a matter of observation of definite facts. Either the facts were observed that constituted a crime, or they were not.
>
>So the issue is really one of credibility between the two, the plaintiff and the defendant, and the issue really is not about probabilities but was there cause for the arrest. If it happened one way, there was; if it happened the other way, there was no cause for the arrest.

Tr. at 150:15-152:4. Plaintiff objected to the charge as follows:

>MR. OKOLI: . . . I thought the Court spent quite some time in talking about the probable cause related to the false arrest without for once indicating the converse, which is even though he had a suspended license, if he was not operating, then the arrest would not be lawful. The Court never said that once.
>
>THE COURT: I told them that.

- 4 -

> MR. OKOLI: I was listening. The Court paid a lot of emphasis. All I'm saying is there is an undue emphasis and the Court kept coming back to it—whatever the transcript shows, that's what it shows—emphasizing the fact that an officer had the right, which is okay, except that equal emphasis wasn't given to the fact that—
>
> THE COURT: I just don't agree.

Tr. at 172:22-173:10.

Prior to trial, plaintiff had submitted a trial memorandum, which included the Second Circuit's definitions of probable cause, both in the context of a false arrest and a malicious prosecution. As quoted in that memorandum, the Second Circuit has defined probable cause as follows: "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003).

In the present motion, plaintiff argues that the court's definition of probable cause was also misleading in light of the fact that defendant gave an erroneous definition of probable cause while he was being questioned on the stand. Defendant defined probable cause as meaning "when a police officer has sufficient facts that a crime is being committed." Tr. at 67:12-13. Plaintiff notes that this definition was incorrect because it says nothing about reasonableness or the requirement that the officer believe that a crime had

- 5 -

been committed by the person to be arrested.  Plaintiff argues that, given the pervasiveness of the probable cause issue at trial and the absence of the court's definition of that term, the jury may have adopted defendant's incorrect definition and may have based its verdict thereon.

    2.  Malicious Prosecution

With respect to malicious prosecution, the court instructed the jury as follows.  On the element of initiation of prosecution, the court said:

> Now here, who initiated the prosecution?  It was Officer Tobon.  He called the district attorney.  He gave the district attorney the information, which was used in preparing what we call the criminal complaint, Exhibit 2, and that is what started the prosecution.  The district attorney had to carry it on, but we don't have any information about the district attorney's state of mind, and the prosecution was really initiated by Officer Tobon.
>
> . . . .
>
>     Another thing, in order to hold a particular person liable for malicious prosecution, the plaintiff has to show that the person initiated the prosecution, and I'm saying quite clearly that the jury could, it would be within your province, to find that Officer Tobon initiated the prosecution by calling the district attorney and giving the information that appeared in this complaint.

Tr. at 165:10-17, 166:6-12.  Plaintiff did not object to this instruction at trial.  In the present motion, plaintiff argues that this instruction was deficient and could have confused the jury because the court should have instructed that defendant initiated the criminal prosecution as a matter of law.  This is because defendant provided the D.A. with all the facts contained in the criminal complaint against plaintiff and, after the complaint was prepared by the D.A., defendant reviewed the complaint for accuracy, signed it, and swore to it.  See Rounseville v. Zahl, 13 F.3d 625, 628-29 (2d Cir. 1994) (swearing out

an accusatory instrument found sufficient to satisfy requirement of initiating prosecution).

On the element of deprivation of liberty, the court said:

> In order to prevail on malicious prosecution, a plaintiff has to show that he was deprived of liberty, and although following the arraignment, the defendant was released, so he wasn't incarcerated, you can consider that being subject to the court orders and being required to come to court was some, perhaps modest, but some deprivation of liberty.

Tr. at 166:12-20.  Plaintiff did not object to this instruction at trial.  Plaintiff now argues that this charge was deficient in two ways.  First, plaintiff argues that the court's tone tended to minimize the constitutional violation at issue.  Second, plaintiff argues that the instruction gave the jury the impression that it had the choice to find or not to find that plaintiff's obligation to appear in criminal court to answer the charges on court-appointed days constitutes a deprivation of liberty.  Plaintiff argues that that the court should have instructed the jury that plaintiff suffered a post-arraignment deprivation of liberty as a matter of law.  Plaintiff provides only a generic citation to <u>Albright v. Oliver</u>, 510 U.S. 266 (1994), in support of this proposition.

### 3.  Missing Witness Charge

With respect to the fact that defendant's partner did not testify at trial, the court instructed the jury as follows:

> I want to say something about people who may have been involved in either the March 2003 incident or back in 2002 and who were not called as witnesses.  There are times that a jury can draw an inference against a party because of that party's failure to call a particular witness.  But it's rare, it can happen, that that is justified.  But remember this.  The incident occurred a little over eight years ago, and you don't really know, there was no evidence

here at all about what had happened to a particular person in these intervening eight years, where they were, where they are, if they're available or if they're not available. You don't know any of that. No evidence was presented about people who weren't called, and there usually isn't. As for people who are available, both sides had the ability to serve subpoenas, take depositions, call witnesses at trial pursuant to subpoenas. So both sides had that ability.

What I'm saying to you is if the matter of the people who weren't called that you've heard about, if it's just a matter of speculation as to what had happened to them and why they were called, why they weren't called, why one party or the other, if it's a matter of speculation, just put that aside. And the safest thing for you to do is to decide the case on the basis of what you actually heard in the way of evidence and the documents that you actually saw rather than to speculate about why somebody was not called who did not appear.

Tr. at 169:13-170:12. Plaintiff objected as follows:

MR. OKOLI: With regard to what the Court termed the missing witness charge, I take exception to the language of it. The Court informed them that both sides had a duty, but there's testimony here—

THE COURT: No. I said both sides could subpoena.

MR. OKOLI: But Mr. Smith here testified that he did not know the identity of the sergeant. So how could he subpoena somebody whose identity he didn't know?

THE COURT: All that had to be done is to ask. The case has been pending for eight years.

MR. OKOLI: Your Honor, then with specific regard—

THE COURT: There was discovery.

MR. OKOLI: With specific regard to the March 19 incident, also we take exception to that because up until now we never got who that particular partner was because he said he didn't know who. He did not have his memo book, so there was no document from which we could have found it.

THE COURT: Mr. Okoli, the case has been pending for eight years. You had discovery rights. Did you ever ask what the identity was?

- 8 -

>MR. OKOLI:  We did, your Honor.  We did, and that's the reason I was arguing about it.  We did ask for this.  We did not receive anything, and he said he didn't know.  So what else could you ask?
>
>THE COURT:  If you didn't receive it, you should have been in court asking me to order it.
>
>MR. OKOLI:  Your Honor, you cannot order what they don't know.  He says I don't know.
>
>THE COURT:  I'm not talking about the testimony.  I'm talking about the police force.
>
>MR. OKOLI:  That is correct.
>
>THE COURT:  Anyway, I'm not changing that instruction one bit.

Tr. at 174:10-175:17.  Prior to the jury instruction, plaintiff had also raised the issue of defendant's partner in his summation.  Plaintiff's attorney told the jury that the only reason defendant did not produce his memo books, which would have revealed the identify of his partner, was because

>they would undermine his testimony and would support the testimony of Mr. Smith as to what happened.  And that is the reason that he's not prepared to tell you who his partners were on those days.  There are documents.  You believe for a moment that the New York City Police Department doesn't know who worked with Police Officer Tobon on June 25, 2002, or who worked with him on March 19, 2003?  Do you believe that?

Tr. at 131:22-132:6.  Defendant objected to this portion of plaintiff's summation and requested a sidebar.  The following discussion took place at sidebar:

>MS. SMITH-WILLIAMS:  Plaintiff is suggesting that this June 25, 2002, arrest, there's a lack of evidence that Officer Tobon is saying he didn't know who the partner was.  It's just not the case.  No. 1, he never asked on direct.  No. 2, plaintiff has been provided with discovery on the June 25, 2002, arrest and the officers present at the time.  So for him to represent that to the jury that they're

- 9 -

unaware, that's just not true.

. . . .

MR. SUD:  He also had equal opportunity to call any single one of them.  He had subpoena power at the time as well.  If he wished to call any of the people who were involved in the 2002 arrest, he was free to do so.  So to imply to this jury that Detective Tobon was intentionally concealing who his partners were or who the other officers were, he is misleading this jury, your Honor.

MR. OKOLI: June 2002, he denied that. He denied knowing who his partner was.  He also denied knowledge of who his partner was, he couldn't recall who his partner was on March 19, 2003.

MS. SMITH-WILLIAMS:  We're not talking about March 19, 2003.  We have no objection to that.  But as to the 2002 incident, that's not the case.  He's making a big deal about this June 2002 [incident] and how we haven't produced witnesses.

THE COURT:  I will give a missing witness charge.

MR. OKOLI:  Okay.

THE COURT:  Basically I'm going to tell them—

MR. OKOLI:  I'd like that.

THE COURT:  —to keep focused on the evidence in court.  They don't know why certain witnesses that are not here weren't called.

MR. OKOLI:  Okay.

THE COURT:  So I'm going to give a very strong missing witness charge to help them focus on the proof in court.

MR. OKOLI:  Yes.

THE COURT:  Not speculate about why certain people were not called.

MR. OKOLI:  Your Honor, I only bring that up in terms of credibility.

THE COURT:  Just stick to the record.

      MR. OKOLI: Yes.

Tr. at 132:19-134:23.  Plaintiff now argues that the court should not have given a missing witness charge at all.  Plaintiff notes that defendant objected to plaintiff's summation with regard to the June 25, 2002 incident only.  Defendant did not object with regard to the March 19, 2003 incident.  Furthermore, plaintiff points out that counsel may properly comment in summation upon the failure of the opposing party to call a witness, even when a missing witness charge is not warranted.  See DeVaul v. Carvigo Inc., 138 A.D.2d 669, 670 (2d Dep't 1988).  As such, plaintiff argues that he was within his right to comment on the failure of Tobon's partner of March 19, 2003, to testify.  Plaintiff further argues that the content and tone of the charge were particularly harmful to plaintiff in light of defendant's testimony that he did not recall who his partner was on March 19, 2003.

## Discussion

      Under Rule 59, a court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A new trial may be granted where errors in the jury charge prejudiced the objecting party.  Jocks v. Tavernier, 316 F.3d 128, 137 (2d Cir. 2003).

      "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  See Atkins v. New York City, 143 F.3d 100, 102 (2d Cir. 1998) (internal quotation omitted).  The aim of Rule 59 is

a narrow one, intended to permit a court to "rectify its own mistakes in the period immediately following the entry of judgment." Greene v. Town of Blooming Grove, 935 F.2d 507, 512 (2d Cir. 1991) (internal quotation omitted).

However, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998). A new trial is warranted where "errors are likely to have had a substantial effect on the jury's resolution of the factual disputes at trial." Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005). Jury instructions that mislead the jury as to the correct legal standard or that fail to adequately inform the jury on the law will be deemed erroneous. Cobb v. Pozzi, 363 F.3d 89, 112 (2d Cir. 2003). On the other hand, "a jury instruction will be deemed adequate if the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." Hartline v. Gallo, 2010 WL 5173144, at *3 (E.D.N.Y. Dec. 14, 2010) (internal quotation omitted).

This was not a case in which slight variations in definition could have made a difference to the jury's deliberations. As described above, plaintiff and defendant offered two very different versions of the events that took place on March 19, 2003. The jury's decision therefore depended on which version of the story they believed to be true. It was clear from the versions presented that if the jury believed that the events unfolded as plaintiff claimed, the jury would have found for the plaintiff on at least the false arrest claim and probably on the malicious prosecution claim as well. On the other hand, if the jury believed

that the events unfolded as defendant claimed, the jury would have found for the defendant, as they did in this case.

Any alleged errors in the court's instructions regarding the definition of probable cause, the initiation of prosecution, or deprivation of liberty did not have "a substantial effect on the jury's resolution" of the factual disputes at issue.  See Nimely, 414 F.3d at 392.  The jury charge, taken as a whole, was correct and sufficiently covered the case so that the jury could come to an intelligent decision.  See Hartline, 2010 WL 5173144, at *3.  The court denies plaintiff's motion for a new trial on the basis of any alleged errors in those instructions.

The missing witness charge presents a different issue since it goes to the credibility of plaintiff and defendant, which, as noted above, was critical in this case.[2]  As quoted above, the court instructed the jury that "the safest thing for you to do is to decide the case on the basis of what you actually heard in the way of evidence and the documents that you actually saw rather than to speculate about why somebody was not called who did not appear."  The court

---

[2] Because the parties and the court have earlier referred to the court's instruction as a "missing witness charge," the court continues to use that language here.  However, the court notes that the instruction was not a true missing witness charge.  Such a charge may be warranted when "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction and fails to produce such witnesses."  U.S. v. Torres, 845 F.2d 1165, 1169 (2d Cir. 1988) (internal quotations omitted); see also Jones v. New York City Health & Hospitals Corp., 102 Fed.Appx. 223, 227 (2d Cir. 2004).  In that situation, a court may, in its discretion, instruct the jury that they "may infer that the testimony, if produced, would be unfavorable to that party" that failed to produce the missing witness.  Torres, 845 F.2d at 1169 (internal quotations omitted).

also noted that "both sides had the ability to serve subpoenas, take depositions, call witnesses at trial pursuant to subpoenas." Plaintiff objects to this last language in particular because he apparently tried but was unable to discover the identity of defendant's partner during the events of March 19, 2003.

The court did not instruct the jury to draw any inferences against the plaintiff. Rather, the court instructed the jury to decide the case solely based on the evidence presented to them. As discussed above, plaintiff, in his summation, had already raised for the jury the fact that the identity of defendant's partner was unknown and had encouraged the jury to draw inferences against the defendant. Plaintiff claimed that defendant's partner's testimony would have undermined defendant's version of events and would have supported plaintiff's. Plaintiff suggested that it was not credible that defendant was unable to remember or to discover the identity of his partner. In light of plaintiff's summation, the effect of the court's instruction was to level the playing field for both parties. As the court noted in response to plaintiff's objection at trial, plaintiff had other means of discovering the identity of defendant's partner but apparently chose not to pursue them. Plaintiff was not entitled to a missing witness charge in his favor, and the court's instruction therefore simply eliminated any unfair advantage plaintiff may have sought to gain in his discussion of the possible reasons why defendant's partner did not testify.

The court does not believe that the jury reached a seriously erroneous

result or that the verdict in this case constituted a miscarriage of justice.  See Atkins, 143 F. 3d 100 (2d Cir. 1998).  "It is a well-recognized principle of our trial system that determining the weight and credibility of [a witness's] testimony. . . . belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men."  Nimely, 414 F.3d at 397.  The jury in this case was required to do just that.

Failure to Object

Defendant also argues that plaintiff's motion for a new trial should be denied because plaintiff failed to timely object to the alleged faulty jury instructions.  As discussed above, plaintiff did object to the court's instructions with regard to the definition of probable cause, the initiation of prosecution, and the missing witness charge.  However, plaintiff did not object with regard to the court's discussion of deprivation of liberty.  In the present motion, as discussed above, plaintiff argues that the court's instruction on that issue was misleading and erroneous because the court told the jury that they could find that there was deprivation of liberty based on the facts of the case.  Plaintiff argues that the court should instead have instructed that plaintiff's obligation to appear in criminal court to answer the charges constituted a post-arraignment deprivation of liberty *as a matter of law*.  Plaintiff also argues that the tone of the court's instruction tended to minimize the constitutional violation involved.

Where a party moves for a new trial on the basis of jury instructions,

that party must have objected to the instructions at trial. A "party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). Any objections to a jury charge must be made prior to the time that the jury begins deliberations, so that the court is afforded "'an opportunity upon second thought, and before it is too late, to correct any inadvertent or erroneous failure to charge.'" Hartline, 2010 WL 5173144, at *4 (quoting City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 274 (1981)). A failure "to object to a jury instruction . . . prior to the jury retiring results in a waiver of that objection." Jarvis v. Ford Motor Co., 283 F.3d 33, 57 (2d Cir. 2002) (internal quotations omitted).

Where a party fails to timely object to a jury charge, the court may entertain a subsequent challenge to that charge only if the alleged errors are fundamental. Shade v. Housing Authority of City of New Haven, 251 F.3d 307, 312-313 (2d Cir. 2001). "An error is fundamental under this standard only if it is so serious and flagrant that it goes to the very integrity of the trial." Id. at 313 (internal quotations omitted). This is not the case here.

As noted above, plaintiff provides only a single citation in support of the proposition that he suffered a deprivation of liberty as a matter of law: a generic citation to Albright v. Oliver, 510 U.S. 266 (1994). In short, that case does not establish plaintiff's position. In the Second Circuit, the following considerations are relevant in determining whether a plaintiff has suffered a post-arraignment deprivation of liberty: whether the plaintiff's travel was

restricted, the number of court appearances he was required to make, and any other post-arraignment release conditions.  Keenan v. Town of Gates, 2011 U.S. Dist. LEXIS 115555, at *17-18 (W.D.N.Y. Sept. 15, 2011) (three court appearances insufficient to establish an unconstitutional deprivation of liberty). See also Rohman v. New York City Transit Auth., 215 F.3d 208, 216 (2d Cir. 2000) (deprivation of liberty found where plaintiff was required to "render himself at all times amenable to the orders and processes of the court" and return to court five times before the charges were dismissed); Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997) (deprivation of liberty found where plaintiff was ordered not to leave the state pending resolution of the charges against him and was required to appear in court eight times).  In the present case, although plaintiff was required to make court appearances, there is nothing in the record to indicate that his travel was restricted or that any other conditions were placed on his release.

      Ultimately, the distinction is of no significance in this case.  As discussed above, plaintiff is unable to show that the alleged error in the deprivation of liberty instruction would have warranted a new trial even if he had objected to the instruction at trial.  The court is not of the view that the jury reached an erroneous result or that the verdict represented a miscarriage of justice.

## Conclusion

Plaintiff's motion for a new trial is denied.

SO ORDERED.

Dated: New York, New York
       August 28, 2012

_____
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/28/12